**CALUMET NATIONAL BANK as Trustee Under Trust No. P–3362 Josephine R. Hand, Perrie Q. Rowe, Jr., and Ewing H. Rowe, Appellants–Defendants Below,**

v.

**AMERICAN TELEPHONE AND TELE-GRAPH COMPANY and AT & T Communications of Indiana, Inc. Appellees–Plaintiffs Below.**

No. 64A03–9410–CV–394.

Court of Appeals of Indiana,
Third District.

March 15, 1995.

Rehearing Denied July 18, 1995.

Patrick J. Galvin, Carl N. Carpenter, Galvin, Galvin & Leeney, Hammond, Glenn J. Tabor, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellant.

Paul A. Rake, Sherry L. Clarke, Eichhorn, Eichhorn & Link, Hammond, for appellee.

STATON, Judge.

Calumet National Bank as Trustee under Trust No. P-3362, Josephine R. Hand, Perrie Q. Rowe, Jr., and Ewing H. Rowe (collectively "Landowners") appeal the trial court's grant of summary judgment in favor of American Telephone and Telegraph Co. and AT & T Communications of Indiana, Inc. (respectively "AT & T and "AT & T Indiana", collectively "Utilities"). Landowners present three issues for our review, which we consolidate into one and restate as follows: whether the trial court erred in overruling Landowners' objections to the Utilities' condemnation action.

The facts most favorable to the judgment reveal that the Utilities instituted statutory condemnation proceedings seeking to condemn an easement on a portion of Landowners' property. The Utilities needed the easement for continued use of a fiber optic telephone cable previously installed on the land.[1] Landowners' filed written objections to the condemnation proceedings, which objections were overruled by the trial court. This appeal ensued pursuant to the procedures set forth in IND.CODE § 32-11-1-5 (1993).

Landowners appeal a negative judgment. When reviewing an appeal from a negative judgment we must determine whether the judgment is contrary to law.

---

1. The cable was originally installed by authority of a license agreement between the Utilities and Consolidated Rail Corporation (Conrail), previous owner of a right-of-way over the land at issue. In 1989, Calumet National Bank, acting as Landowners' trustee, filed a quiet title action against Conrail, asserting fee simple ownership in the land, including the right-of-way. The trial court entered a default judgment against Conrail, vesting fee simple ownership in Landowners pursuant to IND.CODE 8-4-35-1 et seq. Landowners subsequently brought a trespass action against the Utilities based on the encroachment of the fiber optic cable.

Landowners' trespass action and Utilities' condemnation action were consolidated at the trial court level for purposes of addressing common questions of law, but are not consolidated on appeal. Record, p. 134. Regarding the effect of the default judgment on the Utilities' license, the trial court concluded that Landowners "took its interest in the right of way 'subject to' the 'legal occupancy granted by the railroad' to the AT & T companies....". Record, p. 138. Landowners do not challenge this conclusion in this appeal.

*McClure Oil Corp. v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, 553, *reh. denied.* A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483, 489, *trans. denied.*

■ Landowners' arguments are based on construction of Indiana's condemnation statutes. In construing statutes, our primary objective is to ascertain and give effect to the intent of the legislature. *Highland Realty, Inc. v. Indianapolis Airport Authority* (1979), 182 Ind.App. 439, 447, 395 N.E.2d 1259, 1266. We are mindful that condemnation is an exercise of the state's power of eminent domain. Statutes of eminent domain are in derogation of common law property rights, and therefore must be strictly construed both as to the extent of the power and the manner of its exercise. *Id.* (quoting *City of Indianapolis v. Schmid* (1968), 251 Ind. 147, 150, 240 N.E.2d 66, 67).

■ Landowners first argue that the condemnation procedure set forth in IC 32–11–1–2 is unavailable to the Utilities, because the Utilities did not institute condemnation proceedings prior to installation of the fiber optic cable on Landowners' property. In support of this argument, Landowners rely on the fact that a condemnor is required to do certain acts, such as make a valid offer to purchase, *before* proceeding to condemn. *See* IND.CODE § 32–11–1–1 (1993).

While it is true that IC 32–11–1–1 and IC 32–11–1–2 require a condemnor to complete certain acts before instituting condemnation proceedings, we reject Landowners application of this language to the Utilities' conduct. The relevant statutes speak in terms of steps that must be completed *before a condemnor may take possession of the interest ultimately sought* in condemnation proceedings. In the instant case, the interest sought is a permanent easement. The Utilities did not have possession of a permanent easement prior to instituting condemnation proceed-

ings. Instead, Utilities' interest was limited to that of a license. This distinction is crucial:

> 'An easement ... is a liberty, privilege, or advantage in land without profit existing distinct from the ownership of the land, and generally constitutes an interest in the land itself, while a license merely confers a privilege to do some act or acts on the land without possessing any estate therein; [ ...] an easement, ordinarily, is a permanent interest in the realty with the right to enter at all times and enjoy it, while a license, at least so long as it is executory, may be revoked at will, and is terminated by a conveyance of the land by the party giving the license.'

*Industrial Disposal v. City of East Chicago* (1980), Ind.App., 407 N.E.2d 1203, 1205, *reh. denied* (citing 28 C.J.S. Easements § 2).

The right sought to be acquired by the Utilities in this case was a permanent easement. It is undisputed that the Utilities, as providers of telephone service, had statutory authority to institute condemnation proceedings. *See* IND.CODE § 8–1–8–1 (1993). As discussed below, the Utilities followed the steps required by IC 32–11–1–1 and IC 32–11–1–2 before filing their complaint to condemn this permanent easement. Despite Landowners' argument to the contrary, the Utilities' previous lawful entry[2] on the land did not render condemnation proceedings unavailable.

■ Landowners next argue that the trial court's order is contrary to law because the relevant statutes do not provide for condemnation proceedings by multiple condemnors. As a result, the complaint filed by both AT & T and AT & T Indiana is invalid. This argument is without merit. The relevant statutes neither provide for nor preclude institution of condemnation proceedings by more than one condemning authority. Accordingly, general rules of statutory construction apply:

> The construction of all statutes of this state shall be by the following rules, unless

2. A finding that the Utilities' license was invalid would not change this result. Indiana law provides a damages remedy for land "taken for any

public use without having first been appropriated under [IC 32–11–1–1 *et seq.*]." IND.CODE § 32–11–1–12 (1993).

the construction is plainly repugnant to the intent of the legislature or of the context of the statute:

(1) Words and phrases shall be taken in their plain, ordinary and usual, sense.

\* \* \* \* \* \*

(3) Words importing the singular number only may also be applied to the plural of persons and things.

IND.CODE § 1-1-4-1 (1993). Landowners have not demonstrated that permitting condemnation by multiple condemnors is repugnant to the intent of our General Assembly. On the contrary, to preclude condemnation under the circumstances of this case would undermine our General Assembly's intent to empower "[a]ny public utility . . . to appropriate and condemn lands . . . necessary to the carrying out of its objects. . . ." IC 8-1-8-1. It is often necessary for utilities to jointly use power lines and cables to provide their services to the public; joint condemnation merely facilitates this process.[3] We find no error here.

■ Landowners finally challenge the validity of the Utilities' offer to purchase, made prior to the institution of condemnation proceedings. Specifically, Landowners argue that Utilities' offer was invalid because it included a third entity, AT & T Communications, Inc., that was not named as a condemnor in subsequent proceedings.[4] However, Landowners cite no authority supporting their argument that this variance between the offer to purchase and the subsequent complaint is impermissible. The record is devoid of evidence indicating that Landowners would have accepted the tendered offer if it had not included AT & T Communications, Inc. among the offerors. In fact, Landown-

ers offered no evidence that they were misled or otherwise harmed by the omission of AT & T Communications, Inc. from the condemnation complaint.[5]

The record demonstrates that both AT & T and AT & T Indiana fulfilled their statutory obligation when they tendered to Landowners a good faith offer to purchase the easement. _Oxendine v. Public Service Company of Indiana_ (1980), Ind.App., 423 N.E.2d 612, 620-621. Landowners' failure to respond to the offer indicated a failure to agree on a purchase price, and the Utilities thereafter instituted condemnation proceedings. _Id._ at 620. The Utilities proceeded in accordance with statutory authority, and the trial court properly overruled Landowners' objections.

Affirmed.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result without separate opinion.

---

3. Landowners take great pains in their brief to articulate potential conflicts that could result from condemnation by multiple condemnors, including apportionment of damages in case of a statutory violation. We will leave resolution of these issues to our trial courts, as they are not before us on appeal. We decline Landowners' invitation to abrogate well-settled rules of statutory construction based on this speculative reasoning.

4. AT & T Communications, Inc. is a wholly-owned subsidiary of American Telephone and Telegraph Company, and an authorized agent of

both AT & T and AT & T Indiana. Record, p. 314, 177-191.

5. Landowners' argument that permitting any variance between the parties making the offer and the parties filing condemnation proceedings increases the "coercive effect" of offers to purchase is not well taken. The statutes' requirement that condemning authorities first make offers to purchase is in the spirit of settlement without resort to condemnation, not for purposes of coercion.